**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                       )
KEITH L. MILLER, Trustee of            )
the MRFS Living Trust,                 )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )        Civil Action
                                       )        No. 18-11666-PBS
SBA TOWERS V, LLC, NEW CINGULAR        )
WIRELESS PCS, LLC, and THE CITY        )
OF GLOUCESTER,                         )
                                       )
                    Defendants.        )
_____)

**MEMORANDUM AND ORDER**

July 8, 2019

Saris, C.J.

**INTRODUCTION**

This case arises from the Gloucester City Council's
decision to issue a special permit to construct a cell tower on
the property located at 250 Concord Street in Gloucester,
Massachusetts. Plaintiff Keith L. Miller, an attorney, is the
trustee of the MRFS Living Trust, which owns land near the
proposed cell tower site. He alleges that Defendants SBA Towers
V, LLC and New Cingular Wireless PCS, LLC (the "Wireless
Defendants") and the City of Gloucester intentionally deprived
him of statutorily required notice of the Zoning Board of
Appeals proceedings concerning a variance needed to build the
cell tower.

Plaintiff alleges that all three Defendants violated 42 U.S.C. § 1983 (Count I) and that the Wireless Defendants violated Mass. Gen. Laws ch. 93A (Count II) (Docket No. 39). Defendants move to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6) (Docket Nos. 44 and 48). The Wireless Defendants also move to dismiss the 93A claim based on Massachusetts's anti-SLAPP statute (Docket No. 48). Defendants move for Rule 11 sanctions against Miller for statements made in his verified complaint (Docket No. 51). After hearing, the Court **ALLOWS** the motions to dismiss (Docket Nos. 44 and 48) and **ALLOWS** Defendants' motion for sanctions (Docket No. 51).

## FACTUAL BACKGROUND

The following background comes from the First Amended Verified Complaint ("FAC") (Docket No. 39). See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014). The Court also considers other documents not in dispute, including emails submitted by Defendants. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Plaintiff has not objected to the consideration of these emails.

Miller is the trustee of the MRFS Living Trust, which owns real property located in Gloucester, Massachusetts (the "Miller Property").[1]

---

[1] The First Amended Verified Complaint inconsistently describes the property the Trust owns. Compare FAC at 2, with FAC ¶ 1.

## A. Petition for a Variance

Gloucester Zoning Ordinance 5.13 (the "Ordinance") governs the construction of cell towers in the City. The Ordinance establishes certain height restrictions depending on whether the proposed cell tower location is within an overlay district as designated on the City's zoning map. Under the Ordinance, and pursuant to Mass. Gen. Laws ch. 40A, § 10, the Gloucester Zoning Board of Appeals ("ZBA") has jurisdiction to hear and vote on petitions for variances from the requirements of the ordinance.

On September 5, 2014, the Wireless Defendants filed a petition with the ZBA seeking a variance to construct a 150-foot cell tower at 250 Concord Street in Gloucester. The real property at 240/250 Concord Street is owned by the Donald L. Fryklund Living Trust (the "Fryklund Property"). The petition included a list of abutters to 250 Concord Street who were entitled to notice of any hearing and any decision of the ZBA as "parties in interest" under Mass. Gen. Laws ch. 40A, § 11. The abutters report, which was prepared by the City's Assessors Office for the purpose of notifying abutters as required, does not list the Miller Property as abutting 250 Concord Street.[2] Miller did not receive notice as an abutter.

---

[2] Exhibit D to the First Amended Verified Complaint is the City of Gloucester Abutters Report and states:

> The list of owners of record as shown on the most recent tax list of the City of Gloucester has been prepared for the purposes of notifying abutters as required by the City's Zoning Board of

**B. Neighborhood Emails**

From October 2014 through December 2014, Miller received
emails from his neighbors in Gloucester concerning the Wireless
Defendants' petition for a variance to build the cell tower. On
November 15, 2014, Sue Klem emailed a group of neighbors,
including Miller, the following:

> For those of you who did not attend the ZBA hearing on
> November 13 on the Fryklund cell tower:
>
> The ZBA said they do not have experience with cell
> towers and seemed to feel that it was not their
> role/jurisdiction to make decisions on such
> potentially controversial projects as the Fryklund's
> cell tower height . . . . They would like the City
> Council to handle this.
>
> The ZBA will take up the Fryklund cell tower at their
> next meeting on Thursday, December 11 at 7pm. It
> sounds like this meeting will deal with technicalities
> of moving the decision to the City Council.

Docket No. 51-2 at 67. Miller responded to Klem via email that
same evening: "Thanks. I was away on thursday [sic], but will
plan on coming to next meeting." Id. at 66.

On December 8, 2014, Miller received another email from
Klem stating:

> The Zoning Board of Appeals hearing has been moved to
> Thursday, December 18 at Gloucester Town Hall in the
> second floor auditorium. The Fryklund cell tower will
> be discussed at 7pm, at the beginning of the meeting.
> The ZBA and the City Council seem to want the request
> by [the Wireless Defendants] for variances to the city

_____

> Appeals or City Council and it reflects the abutters to the
> Parcel known as Map 246 Lot 13 as further shown on the attached
> map dated 7/23/2014.
Docket No. 39-4 at 3.

> cell phone tower ordinance to be taken up by the City
> Council, most likely starting in January. So the
> December 18 ZBA meeting will likely be more of
> formality [sic].

Id. at 48.

On December 18, 2014, the ZBA issued an opinion denying the

Wireless Defendants' request for a use-variance to build the

tower but granting their request for a procedural variance to

appear before the Gloucester City Council and request a cell

tower special permit, pursuant to Ordinance Section 5.13.3.1(c).

In its opinion on the petition, the ZBA expressly stated that

the "decision granting the petitioners zoning relief is made

solely for the purpose of allowing them to appear before City

Council, which is the proper and exclusive forum for determining

whether a special permit should be granted for the Cell Tower."

Docket No. 39-5 at 7. Miller received no notice of the ZBA's

decision granting the variance and asserts he had no "actual

knowledge that the ZBA had rendered a decision with legal

significance." FAC ¶¶ 17-18.

### C. Petition for Special Permit

On March 4, 2015, relying on the variance from the ZBA, the

Wireless Defendants filed an application with the City Council

seeking a special permit to build a 150-foot cell tower. The

City Council and the its Planning and Development Committee held

several public hearings related to the application in 2015. FAC

On June 23, 2015, the City Council conducted a public hearing to vote on the application, which Miller attended and spoke at.

On August 11, 2015 the City Council issued a written opinion granting the Wireless Defendants a special permit to construct a 130-foot cell tower on the Fryklund Property. The decision was filed with the City Clerk on August 13, 2015.

### D. Prior Litigation

Miller challenged the City Council's decision to grant the special permit in both Massachusetts Superior Court and Massachusetts Land Court. In superior court, Miller asserted two counts against the City and Wireless Defendants. On January 15, 2016, the superior court granted the Wireless Defendants' motion to dismiss Count I, which sought declaratory relief pursuant to Mass. Gen. Laws ch. 231A, § 1, holding: "To the extent that Miller seeks to use Count I to challenge the ZBA's December Decision, which he did not appeal, the claim must be dismissed." Docket No. 39-6 at 4. On January 11, 2018, the superior court also allowed the Defendants' motion to dismiss Count II for lack of standing. The Court held Miller was not a "person aggrieved" under Mass. Gen. Laws ch. 40A, § 17 and thus lacked standing to challenge the issuance of the special permit. Docket No. 45-1 at 2.

In the land court case, the Court granted judgment on the pleadings for the City based on preclusion from the judgment of

the superior court. The land court also held that an appeal

under Mass. Gen. Laws ch. 40A, § 17 was the exclusive remedy

available to Miller. Miller filed notices of appeal from both

judgments.

### E. Withdrawal of Intent to Build

On July 10, 2018, the Wireless Defendants sent a letter to

the City stating their intent not to pursue construction of the

cell tower on the Fryklund Property. The letter stated in part:

> The [Wireless Defendants] hereby surrender all rights
> and interests under the special permit . . . .
>
> Accordingly, the [Wireless Defendants] will not be
> constructing, operating, or maintaining the proposed
> [cell tower] at [the Fryklund Property] as authorized
> by the special permit. However, the [Wireless
> Defendants] reserve the right to seek authorization
> for a [cell tower] at that same (or any other
> Gloucester) location in accordance with the provisions
> of the now applicable Zoning By-Law.

Docket No. 39-7 at 2. Due to the letter, Miller voluntarily

withdrew his appeals in both cases "on the basis of mootness."

FAC ¶ 28. Miller subsequently filed his initial complaint in

this case on August 7, 2018 (Docket No. 1).

### LEGAL STANDARD

In analyzing whether a complaint states a claim sufficient

under Federal Rule of Civil Procedure 12(b)(6), a court must set

aside any statements that are merely conclusory and examine only

the pleader's factual allegations. See Ashcroft v. Iqbal, 556

U.S. 662, 679 (2009). "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

In addition to the complaint, a court may consider "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to the plaintiff's claim" and "documents sufficiently referred to in the complaint" on a motion to dismiss. Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (quoting Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)). Defendants ask the Court to consider the emails sent to Miller in the fall of 2014 alerting him to the Wireless Defendants' petition for a variance and the various ZBA hearings on the issue. Although Miller did not attach the emails to the complaint, the Court considers their contents because the parties do not dispute the authenticity of the emails.[3]

---

[3] Defendants submitted these emails in support of their Rule 11 motion for sanctions against the Plaintiff. At the hearing, Miller readily agreed to have the Court consider the emails and did not dispute that he received, read, and sent them:

> THE COURT: Can I consider the emails in resolving this?

> MR. MILLER: I have no problem with you looking at the emails. I read the emails. I conceded that I read the emails. The emails give me no knowledge of what was being sought. The emails say the ZBA doesn't

**DISCUSSION**

## I. Count I: 42 U.S.C. § 1983

Miller complains that the failure to receive notice was a violation of his right to procedural due process under the Constitution and 42 U.S.C. § 1983.[4] For four separate reasons, Miller's § 1983 claim is dismissed against the City and the Wireless Defendants.

### A. Protected Property Interest

Miller asserts that even though he is not listed in the abutters report, he is a "party in interest" and was thus deprived of statutory notice under Mass. Gen. Laws ch. 40A, § 11. FAC ¶¶ 16-17. Miller further alleges that the Defendants' failure to send him statutory notice deprived him of the opportunity to be heard at the ZBA hearings, and then deprived him of the opportunity to appeal the ZBA's decision.

To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged

---

think this is their issue. Read the emails. They're going to kick the can to the City Council. I knew by reading the statute that that's where it had to be.

Docket No. 71 at 43:23-44:5.

[4] Defendants also move to dismiss any substantive due process claim. See Docket No. 45 at 11. Miller asserts a procedural due process claim in his First Amended Verified Complaint and in his opposition to the motion to dismiss. To the extent Miller seeks to assert any substantive due process claim, it is waived.

deprivation was committed under color of state law." <u>Am. Mfrs.</u>
<u>Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49–50 (1999). "The first
step in seeking relief from a deprivation of property without
due process . . . is a legally plausible allegation of a
protected property interest recognized under state law." <u>Caesars</u>
<u>Mass. Mgmt. Co. v. Crosby</u>, 778 F.3d 327, 332 (1st Cir. 2015)
(quotation omitted).

Miller cannot sustain a § 1983 claim based on a deprivation
of a state-created procedural right. <u>See</u> <u>Town of Castle Rock v.</u>
<u>Gonzales</u>, 545 U.S. 748, 772 (2005) (Souter, J., concurring)
("[I]n every instance of property recognized by this Court as
calling for federal procedural protection, the property has been
distinguishable from the procedural obligations imposed on state
officials to protect it."); <u>Olim v. Wakinekona</u>, 461 U.S. 238,
250 (1983) (explaining that "[p]rocess is not an end in itself,"
and that "[i]ts constitutional purpose is to protect a
substantive interest to which the individual has a legitimate
claim of entitlement"). Instead, "[t]he categories of substance
and procedure are distinct . . . . 'Property' cannot be defined
by the procedures provided for its deprivation." <u>Town of Castle</u>
<u>Rock</u>, 545 U.S. at 771 (Souter, J., concurring) (alterations in
original) (quoting <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470
U.S. 532, 541 (1985)). Notice and an opportunity to be heard are
procedural protections for the deprivation of property rights.

Thus, even if Miller were legally entitled to statutory notice as a "party in interest," he has not alleged a cognizable due process violation simply because he failed to receive notice without also alleging a deprivation of property.

## B. Actual Notice

Even if Miller has a protected property interest,[5] his due process claim is barred because he had actual notice of the ZBA hearings and notice that the ZBA was planning to render a decision. See Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36 (1st Cir. 2001) ("If, say, an interested party has actual knowledge of ongoing . . . proceedings from other sources, inadequacies in the notice afforded by the government will not work a deprivation of due process.").

Miller had actual notice that the hearings were occurring, and notice that the ZBA would issue a decision with legal significance. In the First Amended Verified Complaint, Plaintiff alleges that "without [his] knowledge, the [Wireless Defendants] successfully obtained a variance from the ZBA." Docket No. 39 at

---

[5] To the extent Miller claims he was a "person aggrieved" by the City Council's decision to issue a special permit, he is estopped by the judgment of the Massachusetts Superior Court. See In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) ("Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."). The court held that he was not a "person aggrieved," i.e., someone with standing to challenge a zoning decision, because neither the visual impact of the proposed tower nor the resulting diminishment in the value of Miller's property were property interests protected by the relevant bylaw. See Docket No. 45-1 at 8-11.

3. He also states that he had "had no actual knowledge that the ZBA had rendered a decision with legal significance." Id. ¶ 18. The emails demonstrate that these allegations are not plausible. The emails between Klem, other neighbors, and Miller, clearly indicate Miller knew in the fall of 2014 that the ZBA was holding hearings concerning the Wireless Defendants' petition for a variance. Additionally, Miller knew about the purpose of the ZBA's December 18, 2014 meeting because Klem informed him that the "meeting will deal with technicalities of moving the decision to the City Council." Docket No. 51-2 at 67.

Miller admitted before this Court that he knew he was not receiving statutory notice well before the ZBA issued its final decision. Miller stated that after receiving an email from Klem: "I called my friend and I said, 'Do I have a notice in the mailbox?' No notice. Okay, I said, 'Okay, I guess I'm not an abutter because maybe there are two deeded parcels.'" Docket No. 71 at 41:20-23. Miller cannot now claim to be deprived of any opportunity to be heard or to appeal the decision when he admits he voluntarily chose not to go to any of the meetings and did not make an effort to read the final, publicly docketed decision. See Commonwealth v. Olivo, 337 N.E.2d 904, 909 (Mass. 1975) ("A party may not shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences

which would flow from the notice of it had actually been received." (quotation omitted)).

### C. Statute of Limitations

Miller's § 1983 claim is also untimely. For § 1983 claims, the Court ordinarily borrows the forum state's limitation period governing personal injury. Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). "Massachusetts prescribes a three-year statute of limitations for personal injury actions." Id.(citing Mass. Gen. Laws ch. 260, § 2A). Federal law determines the date on which the cause of action accrued. See Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). "The accrual period in a section 1983 case ordinarily starts when the plaintiff knows, or has reason to know, of the injury on which the action is based." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

Miller's entire complaint focuses on Wireless Defendants' failure to give him notice of the ZBA's hearings and decision. The ZBA issued its decision on December 18, 2014. It was docketed with the City Clerk on January 12, 2015. The Wireless Defendants filed an application with the City Council seeking a special permit, which was premised on the variance from the ZBA, on March 4, 2015. Miller knew about the application because he spoke at one of the City Council meetings in the early spring of 2015. He would have at least been on inquiry notice then to

determine the content of the ZBA's decision. Miller filed this suit on August 7, 2018, more than three years after he knew or had reason to know of any injury arising from the failure to get notice of the ZBA proceedings.

### D. Color of State Law

Miller argues that the Wireless Defendants' actions are attributable to the state under the test articulated in Perkins v. Londonderry Basketball Club, 196 F. 3d 13 (1st Cir. 1999). However, the complaint is devoid of any facts to support Miller's allegation that the Wireless Defendants, "with the assistance of the City, consciously concocted a scheme" to deprive him of legal notice of the zoning petition. FAC ¶ 42; see also FAC ¶ 34. "Conclusory statements" and "generalized allegations of conspiracy" are not enough to make out a specific claim. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980); see also Elena v. Municipality of San Juan, 677 F.3d 1, 6 (1st Cir. 2012) (affirming the dismissal of claims brought under 42 U.S.C. § 1983 when plaintiffs only claimed private defendants "jointly and concertedly" worked with municipal defendants to violate their rights without specific factual allegations to support such a conclusory claim). Miller's conclusory allegations of a scheme between the Wireless Defendants and City cannot stand. Additionally, Miller has not alleged that in seeking a variance from the ZBA and a special permit from the City Council, the

Wireless Defendants were in any way "exercising power possessed by virtue of state law." Polk County v. Dodson, 454 U.S. 312, 317–18 (1981) (quotation omitted).

## II. Count II: Mass. Gen. Laws ch. 93A

Miller also alleges that the Wireless Defendants engaged in unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 9. This claim is dismissed under Federal Rule of Civil Procedure 12(b)(6) because chapter 93A only applies to conduct that occurs in the course of trade or commerce. Additionally, the Court allows the Wireless Defendants' special motion to dismiss under Massachusetts's anti-SLAPP statute because the claim is based exclusively on the Wireless Defendants' protected petitioning activities.

### A. Trade or Commerce

It is well established that although chapter 93A "provides a broad remedy, it is only directed at conduct that occurs in the course of trade or commerce. '[U]nfair or deceptive acts or practices' therefore can only form the basis of a ch. 93A claim if those acts 'are perpetrated in a business context.'" St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 66 (1st Cir. 2001) (quoting Lantner v. Carson, 373 N.E.2d 973, 977 (Mass. 1978)). Miller argues that the statutory requirement under chapter 40A, § 11 to provide notice to parties in interest "created a direct transactional relationship" between the

15

Wireless Defendants and Miller. Docket No. 55 at 16. Even if Miller is a party in interest, he cites no case law to support the proposition that the requirement to provide statutory notice creates a transactional relationship in the business context. Miller is correct that chapter 93A does not require contractual privity. "Nonetheless, some business, commercial, or transactional relationship is required even for a claim brought under section 9. Absent any such relationship, [Plaintiff's] chapter 93A claim is frivolous." Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 131, 141 (1st Cir. 2017) (citation omitted) (affirming the district court's dismissal of a chapter 93A claim where landowners brought claim against landscape design firm retained by neighborhood association formed to oppose landowners' proposed construction of a new home). Therefore, Count II is dismissed because the alleged conduct of petitioning for a variance or special permit did not occur during "trade" or "commerce."

**B. Anti-SLAPP**

Massachusetts's anti-SLAPP statute[6] provides that "[i]n any case in which a party asserts that the [claims] against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the

---

[6] SLAPP stands for "Strategic Lawsuit Against Public Participation." See Duracraft Corp. v. Holmes Prods. Corp., 691 N.E.2d 935, 939 n.7 (Mass. 1998).

commonwealth, said party may bring a special motion to dismiss." Mass. Gen. Laws ch. 231, § 59H. While the statute is said to provide a "procedural" remedy, it is arguably "substantive" state law and may be applied to state law claims filed in federal court. See Godin v. Schencks, 629 F.3d 79, 89-92 (1st Cir. 2010).

The anti-SLAPP analysis uses a multi-step burden-shifting framework. First, the "special movant must demonstrate that the nonmoving party's claims are solely based on its own petitioning activities." Blanchard v. Steward Carney Hosp., Inc., 75 N.E.3d 21, 38 (Mass. 2017). Second, the burden shifts, and the nonmoving party must show "that the special movant's petitioning activities upon which the challenged claim is based lack a reasonable basis in fact or law, i.e., constitute sham petitioning, and that the petitioning activities at issue caused it injury." Id. Third, the "nonmoving party [must show] that its own claim - the one being challenged by the special motion - is itself colorable . . . . If the nonmoving party's claim is not colorable, then the special motion must be granted." Steinmetz, 862 F.3d at 135-36 (quotation and citation omitted). "Fourth, and finally, [the court] ask[s] whether the nonmoving party has demonstrate[ed] that each challenged claim was not primarily brought to chill the special movant's legitimate petitioning activities. If the answer to this question is yes, then the

17

special motion fails. If the answer to this question is no, then the special motion succeeds." Id. at 136 (cleaned up).

First, the Wireless Defendants' petition for a variance and application for a special permit fall squarely within the statute's conception of legitimate petitioning activity.[7] "Petitioning includes all statements made to influence, inform, or at the very least, reach governmental bodies — either directly or indirectly." N. Am. Expositions Co. v. Corcoran, 898 N.E.2d 831, 841 (Mass. 2009) (quotation omitted). Second, Miller has not shown that these petitioning activities constituted a sham. Miller argues that the petition was a sham not grounded in law because the Wireless Defendants provided an incomplete list of "parties in interest." However, the City's tax assessor provided the list of abutters, and there is no plausible allegation that the Wireless Defendants knew that the list was incorrect.

Third, Miller's 93A claim, as discussed above, is without merit. Based on the history of litigation between the parties, the statement of the Wireless Defendants that they reserve the right to re-petition the City, and the frivolous nature of this

---

[7] Plaintiff requests that this Court take judicial notice of a recent Massachusetts Appeals Court case, Citizens Insurance Company of America v. 290 Auto Body, Inc., No. 18-P-488, 2019 WL 2565358 (Mass. App. Ct. June 21, 2019). The case is inapposite since the claim at issue there was for tortious interference "not based on any statement or communicative conduct by [the movant] designed to influence, inform, or even reach a government body," but instead was "based on a private interaction involving alleged unruly assaultive behavior." Id. at *3.

suit, the Court concludes with "fair assurance" that the purpose
of the suit is to chill the Wireless Defendants' right to re-
petition the City of Gloucester to build a cell tower.
Blanchard, 75 N.E.3d at 38. Therefore, Wireless Defendants'
special motion to dismiss is granted.

## III. **Defendants' Motion for Sanctions**

Defendants move pursuant to Federal Rule of Civil Procedure
11 to sanction Plaintiff for alleging in his First Amended
Verified Complaint that he did not have actual knowledge of the
ZBA's hearings or decision on the Wireless Defendants' petition
for a variance. See Docket No. 51. Rule 11(b) states that "by
signing, filing, submitting or later advocating" a pleading, a
party represents that "the factual contentions have evidentiary
support." Fed. R. Civ. P. 11(b)(3). "Rule 11(b) is not a strict
liability provision and a showing of at least culpable
careless[ness] is required before a violation of the Rule can be
found." Citibank Glob. Mkts., Inc. v. Rodríguez Santana, 573
F.3d 17, 32 (1st Cir. 2009) (alteration in original) (quotation
and citation omitted).

Defendants point to six statements in the complaint that
they claim are demonstrably false based on the email exchanges
between Miller and Klem: (1) that Defendants "deprived [Miller]
of an opportunity to be heard"; (2) that "without Miller's
knowledge, the [Wireless Defendants] successfully obtained a

variance from the ZBA"; (3) that Miller "received no notice of
the ZBA Application, the relief sought by the [Wireless
Defendants] or of the decision of the ZBA on December 18, 2014,
granting a variance to the [Wireless Defendants]"; (4) that
"[w]ithout such required notice, Miller had no actual knowledge
that the ZBA had rendered a decision with legal significance,
and was not in a position to timely file an appeal of the
decision under G.L. c. 40A, § 17"; (5) that "Miller was deprived
of notice of the ZBA's actions, and his right to timely appeal
from the ZBA's decision"; and (6) that "[t]he conduct of the
Defendants had the . . . effect of depriving Miller of his
opportunity to be heard before the ZBA and to seek judicial
review of the erroneous decisions of the ZBA." Docket No. 51-1
at 1, 3, 7, and 11.

This Court has already noted that some of Miller's
allegations with regards to notice are implausible given the
email exchanges. Examination of the record shows that Miller was
copied on numerous emails between October 6, 2014 and December
11, 2014, in which opponents of the proposed tower discussed, in
detail, the ZBA hearing schedule for the proposed tower. See
Docket No. 51-2 (Def. Ex. B).

In response, Miller "denies that the string of emails,
which he previously produced in discovery in related state court
actions, . . . in any way renders the averments in the [First

20

Amended Verified Complaint] untrue." Docket No. 57. Miller does not deny that the emails alerted him to the existence of the petition or hearings for the proposed cell tower. See Docket No. 55-1 ¶¶ 8, 12-15. Rather, he states in his affidavit that, "[r]elying on [Klem's emails], and various conflicts, [he] did not attend the next ZBA meeting, or any subsequent meetings, including the final hearing," and that the emails never discussed "the true purpose of the Application, or the substance of the [d]ecision." Id. ¶¶ 15-16. Miller further asserts that "the record before the Court is devoid of any constructive or actual notice to [him] of (a) what was before the ZBA for consideration regarding the proposed cell tower and/or (b) the substance of the ZBA's [d]ecision during any relevant appeal period." Id. ¶ 17.

This argument is head-spinning. The emails clearly show that Miller had actual notice that the ZBA was holding hearings on the Wireless Defendants' application and that it would likely be issuing an opinion to transfer the ultimate decision to the City Council. Miller's allegations that he lacked actual notice and was therefore deprived of the opportunity to be heard are unsupported by the evidence.

In this case, Attorney Keith L. Miller is representing himself as trustee of the MRFS Living Trust.[8] He verified that the statements contained in the complaint were true and accurate to the best of his knowledge. See Docket No. 39 at 14. They were not. Therefore, the Court allows Defendants' motion to impose sanctions on Attorney Keith L. Miller for statements made in the First Amended Verified Complaint and subsequent affidavit. The Court awards Defendants reasonable attorney's fees for pressing this motion.

## ORDER

The Court **ALLOWS** both motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Nos. 44 and 48) and **ALLOWS** Wireless Defendants' special motion to dismiss pursuant to Massachusetts's anti-SLAPP statute (Docket No. 48). The Court also **ALLOWS** Defendants' motion for Rule 11 sanctions (Docket No. 51).

SO ORDERED.

                              /s/ PATTI B. SARIS
                              Hon. Patti B. Saris
                              Chief United States District Judge

---

[8] A litigant's pro se status may be considered when determining whether to impose Rule 11 sanctions. See Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("[T]he court has sufficient discretion to take account of the special circumstances that often arise in pro se situations."). However, Local Rule 83.5.5(c) does not allow a trust to appear pro se, although a trustee may appear on behalf of the entity as long as the individual is also an attorney who is otherwise permitted to practice in this court. Therefore, Miller, as both a trustee and an attorney permitted to practice in the United States District Court for the District of Massachusetts, is not considered to be appearing pro se.